## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID AND DEBORAH CHILDS and WHITNEY COLE, | C.A. No. 2:21-cv-01100-CB |
| *Proposed Class Action Plaintiffs*, | Electronically Filed |
| v. | |
| WESTMORELAND SANITARY LANDFILL LLC, | |
| *Defendant*. | |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
### OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

**BUCHANAN INGERSOLL & ROONEY, P.C**
Stanley Yorsz PA ID #28979
stanley.yorsz@bipc.com
William J. Moorhead PA ID #52761
william.moorhead@bipc.com
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Phone 412-562-8800
Fax 412-562-1040

*Attorneys for Defendant, Westmoreland Sanitary Landfill LLC*

September 21, 2021

i

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................... i

TABLE OF AUTHORITIES .......................................................................... iii

INTRODUCTION ............................................................................................ 1

BACKGROUND AND ALLEGATIONS OF COMPLAINT ......................... 2

            I. <u>WSL Operates Under Federal And State Regulation To Capture</u>

            <u>Greenhouse Gases For Productive Use</u> ....................................................... 2

            II. <u>WSL Has Implemented A PA DEP – Approved Plan To Ensure Proper</u>

            <u>Emissions</u> ............................................................................................... 5

            III. <u>Plaintiffs' Allegations</u> ..................................................................... 6

LEGAL STANDARD ...................................................................................... 8

ARGUMENT .................................................................................................... 9

            I. <u>Plaintiffs Fail To State A Claim For Negligence</u> ................................ 9

            II. <u>Plaintiffs Have Failed To Allege Any Outrageous Conduct And Their</u>

            <u>Request For Punitive Damages Should Be Dismissed</u> ........................... 12

            III. <u>Plaintiffs Are Not Entitled To Injunctive Relief Where Such Relief</u>

            <u>Contradicts The Primary Jurisdiction Of Agencies With Statutory</u>

            <u>Authority</u> ............................................................................................. 15

CONCLUSION ............................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Court Cases**

*Andrews v. Fullington Trailways, LLC*,
    2016 U.S. Dist. LEXIS 88651 (W.D. Pa. July 8, 2016) ...............................................13

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
    823 F.3d 51 (2d Cir. 2016) .........................................................................................3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................8

*Baptiste v. Bethlehem Landfill Co.*,

    965 F.3d 214 (3d Cir. 2020).................................................................................10, 11

*Baykeeper v. NL Industries, Inc.*,
    660 F. 3d 686 (3rd Cir. 2011) ................................................................................15, 16

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................8, 14

*Bell v. Cheswick Generating Station*,
    No. 12-cv-929 (W.D. Pa.) .............................................................................................6

*Boring v. Google Inc.*,
    362 F. App'x 273 (3d Cir. 2010) ..........................................................................12, 14

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997).......................................................................................7

*City of Bethany v. Rockwell Automation, Inc.*,
    2017 U.S. Dist. LEXIS 139722 (W.D. Okla. Aug. 30, 2017) ..............................16, 19

*Cmty. Preschool & Nursery of E. Liberty*,

    2009 U.S. Dist. LEXIS 93209 (W.D. Pa. Sept. 6, 2009)..............................................8

*Collins v. Olin Corp.*,
    418 F. Supp. 2d 34 (D. Conn. 2006)......................................................................16, 19

*Global Naps, Inc. v. Bell Atl.–N.J.*,
    287 F. Supp. 2d 532 (D.N.J. 2003) ............................................................................16

*Lloyd v. Covanta Plymouth Renewable Energy, LLC*,
    2021 U.S. Dist. LEXIS 20353 (E.D. Pa. Feb. 3, 2021) ........................................10, 11

*Maroz v. Arcelormittal Monessen LLC*,
    No. 15-cv-0770, 2015 WL 6070172 (W.D. Pa. Oct. 15, 2015).........................6, 13, 14

*Menkes v. 3M Co.*,
    2018 U.S. Dist. LEXIS 84574 (E.D. Pa. May 21, 2018) ...........................................11

*Morse v. Lower Merion Sch. Dist.*,
    132 F.3d 902 (3d Cir. 1997)..........................................................................................8

*In re Paoli R.R. Yard PCB Litig.*,
    113 F.3d 444 (3d Cir. 1997)..........................................................................................9

*In re Paoli Railroad Yard PCB Litigation*,
    35 F.3d 717 (3d Cir. 1994)...............................................................................9, 10, 11

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002)..........................................................................................8

*Russell v. Chesapeake Appalachia, L.L.C.*,
    No. 14-cv-00148, 2014 WL 6634892 (M.D. Pa. Nov. 21, 2014) ........................13, 14

*Santiago v. Warminster Twp.*,
    629 F. 3d 121 (3rd Cir. 2010) .......................................................................................8

*Sierra Club v. Chesapeake Operating, LLC*,
    248 F. Supp. 3d 1194 (W.D. Okla. 2017) ..............................................................15, 16

*United States v. Harris*,
    884 F. Supp. 2d 383 (W.D. Pa. 2015).........................................................................3

*United States v. W. Pac. R.R. Co.*,
    352 U.S. 59 (1956)......................................................................................................15

**Statutory Authority**

35 P.S. § 6018, ............................................................................................................16

35 P.S. § 6018.101 ........................................................................................................5

35 P.S. §§ 6018.104 ....................................................................................................16

35 P.S. §§ 6018.601-.606..............................................................................................16

35 P.S. § 6018.613 ................................................................................................16

71 P.S. § 510-17 ...........................................................................................16, 17

**State Court Cases**

*Centolanza v. Lehigh Valley Dairies, Inc.*,
    635 A.2d 143 (Pa. Super. Ct. 1993) ..........................................................5

*Cubano v. Sheehan*,
    146 A.3d 791 (Pa. Super. Ct. 2016) ..........................................................3

*Hutchinson v. Luddy*,
    870 A.2d 766 (Pa. 2005) ...........................................................................12

*Phillips v. Cricket Lighters*,
    883 A.2d 439 (Pa. 2005) ...........................................................................12

*Ross v. USX Company*,
    GD-17-008663 (C.P. Allegheny) ..........................................................6, 16

**Federal Statutory Authority**

42 U.S.C. § 6901(a)(4), (d)(2) ..............................................................................4, 5

110 P.L. 140 ........................................................................................................3

**Federal Rules and Regulations**

59 Fed. Reg. 29804 ...........................................................................................5, 16

Fed. R. Civ. P. Rule 12(b)(6) ..............................................................................8

Fed. R. Civ. P. Rule 8(a) ................................................................................8, 14

Fed. R. Civ. P. Rule 12(b)(1) ..............................................................................15

**Other Authorities**

25 Pa. Code Chapters 271, 273 *et seq*..................................................................17

25 Pa. Code Chapters 271, 283 ..............................................................................5

Project and Landfill Data by State, https://www.epa.gov/lmop/project-and-
    landfill-data-state (last visited September 20, 2021) ....................................3

## **INTRODUCTION**

This is one of dozens of materially identical lawsuits that Plaintiffs' counsel has filed across the county alleging nuisance and negligence claims related to emissions. In this case, the suit concerns operations at a municipal solid waste landfill ("MSWL"). Defendant Westmoreland Sanitary Landfill LLC ("WSL") owns and operates an MSWL located in Belle Vernon, Pennsylvania. This is a highly regulated site subject to both federal and State oversight and regular inspection by the Pennsylvania Department of Environmental Protection ("PA DEP"). The Belle Vernon site participates in a voluntary federal clean energy program with its own specifications and best practices, operates consistent with consent orders and agreements with PA DEP, and invests heavily in modern MSWL technology to ensure efficient, responsible collection practices and regulatory compliance. Nevertheless, Plaintiffs—borrowing language from many other complaints that their counsel have filed—allege generally that those practices are negligent and create a public and private nuisance.

Courts have drawn limits around these types of lawsuits. WSL thus does not seek dismissal of this case in full. But in three respects, the Complaint fails to state a claim.

*First*, Plaintiffs cannot state a claim for negligence in Count III. Having failed to allege any cognizable physical harm to their property, Plaintiffs cannot, as a matter of law, state a negligence-based claim for dimunition of property value or lost enjoyment. The alleged damages here are based solely on claims of diminution of value from a temporary, nonphysical, exterior condition that dissipates on its own and causes neither

personal injury nor physical damage.  Absent any allegation of physical property damage, claims for diminution of value and lost enjoyment must be dismissed.

*Second*, the Court should dismiss Plaintiffs' request for punitive damages.  The Complaint lacks any allegation to suggest that WSL's conduct was so outrageous as to demonstrate willful, wanton or reckless behavior.  Consistent with other decisions addressing materially identical and conclusory allegations, this Court should dismiss the prayer for relief to the extent Plaintiffs seek punitive damages.

*Third*, the Court should also dismiss Plaintiffs' sole request for injunctive relief. Where regulatory agencies already are applying their discretion and technical expertise to enforce compliance requirements, courts defer to the primary jurisdiction of those agencies and refuse to permit claims for injunctive relief that could lead to conflicting obligations.  In this case, an injunction would supplant the detailed and complex plan that PA DEP reviewed and approved for addressing the same violations alleged in this case.

In each of these three respects, the Complaint fails as a matter of law and should be dismissed.

## BACKGROUND AND ALLEGATIONS OF THE COMPLAINT

I.    **WSL Operates Under Federal and State Regulation to Capture Greenhouse Gases for Productive Use**

The MSWL in Belle Vernon began operations in 1965 and, today, is one of the relatively few sites of its kind that partners with the federal Environmental Protection Agency ("EPA") to generate green energy from naturally occurring landfill gas ("LFG").[1]

---

[1] The EPA provides a published database of all landfills that participate in this program and identifies the date each opened.  *See* Project and Landfill Data by State,

2

As part of its voluntary participation in the EPA's Landfill Methane Outreach program ("LMOP"), WSL has implemented new technologies to capture, separate, and re-use naturally occurring landfill gases at the Belle Vernon site.  Using these systems, WSL is able to recycle landfill gas into fuel for natural-gas powered vehicles and for use as market-based credits that help other companies meet their own federal environmental obligations.  *See generally* Notice of Removal (ECF #1).  Greenhouse gases are thus captured prior to release into the atmosphere and recycled into clean, productive use.  *Id*. Through initiatives like the LMOP, the federal government achieves its goals of moving "'the United States toward greater energy independence and security,'" deploying "'greenhouse gas capture and storage options,'" and increasing "'the production of clean renewable fuels.'"  *Id*. at 1 (quoting the Energy Independence and Security Act of 2007, 110 P.L. 140).

Although in operation for over fifty years, the Belle Vernon site remains well situated for an MSWL.  As shown in the map provided below, the site is surrounded by largely undeveloped rural land to the North, South and East and primarily commercial and industrial use immediately to the West.[2]

---

https://www.epa.gov/lmop/project-and-landfill-data-state (last visited September 20, 2021).  Of the 135 landfills in the Commonwealth of Pennsylvania, WSL is one of 37 that participate in this program.  The EPA data—as well as the other publicly available agency documents described below—may be judicially noticed.  *See, e.g.*, *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59-60 (2d Cir. 2016) (taking judicial notice of publicly available agency records).

[2] "[I]t is well-settled that courts… may take judicial notice of the map of a general area and consider the location of events in rendering a decision."  *United States v. Harris*, 884 F. Supp. 2d 383, 395 (W.D. Pa. 2015); *see also Cubano v. Sheehan*, 146 A.3d 791, 795 (Pa. Super. Ct. 2016).



        The Belle Vernon site also is subject to extensive regulatory oversight, inspection,

and monitoring.  For decades, the U.S. government has overseen state and local

municipal solid waste landfills.  In 1976, Congress enacted the Resource Conservation

and Recovery Act to address "problems of waste disposal" that had become "national in

scope and … necessitate[d] federal action," and to help "develop alternative energy

sources … to reduce our dependence on such sources as petroleum products."  42 U.S.C.

§ 6901(a)(4), (d)(2).  Under RCRA, states must "adopt and implement a permit program"

for solid waste disposal facilities that complies with federal regulations.  *Id.* §

6945(c)(1)(A)-(B).  States submit their proposed program for managing solid waste to the

EPA for federal approval.  *Id.* § 6495(c)(1)(C).

The EPA approved Pennsylvania's program for permitting and monitoring

MSWLs in 1994.  *See* 59 Fed. Reg. 29804.  That program is found in the

Commonwealth's Solid Waste Management ("SWMA") and its implementing

regulations, which PA DEP has exclusive jurisdiction to administer and enforce.  *See* 35

P.S. § 6018.101 *et seq.*; *see also* 25 Pa. Code Chapters 271, 283; *Centolanza v. Lehigh*

*Valley Dairies, Inc.*, 635 A.2d 143, 149 (Pa. Super. Ct. 1993) (SWMA "does not provide

for a private cause of action" and "private persons may only intervene under the SWMA

in actions brought by" PA DEP), *aff'd* 658 A.2d 336 (Pa. 1995).  WSL operates pursuant

to a Solid Waste Management permit that PA DEP issued and oversees.  Pursuant to this

permit, PA DEP has access to the Belle Vernon site for regular inspections and to review

compliance with applicable federal and state regulation.

## II.    WSL Has Implemented a PA DEP-Approved Plan to Ensure Proper Emissions

PA DEP actively exercises its enforcement authority.  And, where PA DEP finds

that operations at the Belle Vernon site could be improved, WSL and PA DEP work

together to address the matter appropriately.  For instance, in October 2020, based on

three inspections from 2019 (July 31, August 28, and October 30) and ten inspections

from 2020 (January 24, February 13, April 24, May 14, June 3, June 15, July 7, July 21,

August 14, and September 24), WSL and PA DEP entered into a Consent Order and

Agreement ("COA").  *See* Oct. 7, 2020 Consent Order and Agreement, attached as Ex. A.

Among other things, WSL agreed in the COA to "develop and submit to [PA DEP], for its review and approval, a Corrective Action Plan to address" various operational deficiencies that PA DEP had identified.  *Id.* ¶ AB.3(e).

WSL submitted its Corrective Action Plan on November 6, 2020, and—following comments from PA DEP—provided additional information and proposed measures on January 29, 2020.  *See* Nov. 6, 2020 Corrective Action Plan, attached as Ex. B; Jan. 29, 2020 Form 14 Submittal, attached as Ex. C.  Those measures included a fifteen-page Odor Mitigation Plan with extensive provisions related to site improvements and upgrades; leachate management system monitoring and maintenance; other best air pollution control practices; odor and emission assessment; and complaint handling procedures.  *See* Ex. C at Attachment 14-4.  On March 4, 2021, PA DEP approved both WSL's Odor Mitigation Plan and the Corrective Action Plan as a whole.  *See* Mar. 4, 2021 Approval, attached as Ex. D.

## III.    Plaintiffs' Allegations

Plaintiffs' counsel has filed dozens of lawsuits alleging that the operation of an MSWL or other industrial facility is negligent and constitutes a public nuisance.  These lawsuits track any publicly available regulatory reports for a particular facility and allege that the plaintiffs' "properties have been, and continue to be, physically invaded by fugitive noxious odors emitted from [defendant's site]."  Complaint ¶ 12 (ECF #1-3).[3]

---

[3] *Compare, e.g.*, Complaint ¶ 53, *Bell v. Cheswick Generating Station*, No. 12-cv-929 (W.D. Pa.) (Bissoon, J.) ("Plaintiffs' person and property are physically invaded by particulates and air contaminants."); Complaint ¶ 15, *Ross v. USX Company*, GD-17-008663 (C.P. Allegheny) ("Plaintiff's property has been and continues to be physically invaded by noxious odors and air particulates."); Complaint ¶ 7, *Maroz v. Arcelormittal*

This lawsuit is no different.  Plaintiffs' only factual allegations specific to WSL are lifted from the COA and other PA DEP administrative documents.  *Compare id.* ¶ 25(b) *with* COA ¶¶ M-AA.[4]  Plaintiffs then allege that WSL's highly regulated practices for capturing and processing LFG violate Pennsylvania's EPA-approved standards for MSWLs and give rise to causes of action for private nuisance (Count I), public nuisance (Count II), and negligence (Count III).  *Id.* ¶¶ 47-79.  Plaintiffs seek to assert these claims on behalf of a class comprising the owners and inhabitants of approximately 4,200 separate residences within a 1.5 mile radius of the WSL facility.  *Id.* ¶¶ 35, 37.

Plaintiffs seek "injunctive relief not inconsistent with the Defendant's state and federal regulatory obligations," as well as compensatory and punitive damages.  *Id.*, Prayer for Relief ¶¶ D, H.  The alleged damages are limited to the purported diminution of property values and the alleged loss of use and enjoyment.  *Id.* ¶¶ 19-25, 27-29, 50, 52, 53, 63-66, 75, and 76.  Plaintiffs make only conclusory statements of "physical property damage" but provide no properly supported allegations of any physical harm to their property.  *Id.* ¶¶ 28, 53.  Plaintiffs also make no particularized allegations that they, or any members of the purported class, suffered personal injury or any damages to their person.[5]  *Id.* ¶¶ 20, 23, 24, 28, 29, 31, 42, 53, 55, 65, 75, and 76.

---

*Monessen LLC*, No. 15-cv-0770 (W.D. Pa.) ("Plaintiffs' property has been and continues to be physically invaded by noxious odors and air particulates.").

[4] For this reason as well, the COA and related administrative documents are properly before the Court.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (district court can consider in resolving a motion to dismiss documents "integral to or explicitly relied upon in the complaint").

[5] While Plaintiff David Childs mentions experiencing nausea in his description of the impact alleged noxious odors may have had (Complaint ¶22), nowhere in Plaintiffs'

## **LEGAL STANDARD**

Fed. R. Civ. P. Rule 12(b)(6) calls for the dismissal of a complaint when it "fails to state a claim upon which relief can be granted."  Rule 8(a) requires that allegation in the complaint must be sufficient to "nudge … claims across the line from conceivable to plausible." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).  A plaintiff's entitlement to relief "requires more than labels and conclusions" or a mere "formulaic recitation of the elements" of a claim.  *Twombly*, 550 U.S. at 555.  The factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the complaint's allegations are true." *Id*.  This high standard requires that a complaint contain "enough facts to state a claim for relief that is plausible on its face."  *Id* at 570; *see also Accord Santiago v. Warminster Twp.*, 629 F. 3d 121, 128 (3rd Cir. 2010).  While the Court must take as true the factual allegations of the complaint, it must also "disregard legal conclusions and 'recitals of the elements of a cause of action, supported by mere conclusory elements.'" *Santiago*, 629 F.3d at 128; (citation omitted).  A court cannot accept "bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations."  *Cmty. Preschool & Nursery of E. Liberty*, 2009 U.S. Dist. LEXIS 93209, at *6 (W.D. Pa. Sept. 6, 2009) (citing *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n. 8 (3d Cir. 1997)); *see also Iqbal*, 556 U.S. at 663 ("the tenet that a court must accept a

---

Complaint do they specify that the scope of their damages include personal injury to Plaintiffs or members of the putative class.

complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements").

## ARGUMENT

### I.     Plaintiffs Fail To State A Claim For Negligence

Plaintiffs' negligence claim fails to plead essential elements under Third Circuit precedent and Pennsylvania law.  This is not a personal injury case.  Throughout the Complaint, Plaintiffs narrowly limit their alleged damages to the diminution of property value and the loss of enjoyment and use of their property.  *See* Complaint ¶¶ 20, 23, 24, 28, 29, 31, 42, 53, 55, 65, 75, and 76.  But to state such a claim, Plaintiffs must sufficiently allege physical property damage.  They do not.

The Third Circuit permits a claim for diminution of property value only "where there has been some initial physical damage to plaintiffs' land."  *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 798 n.64 (3d Cir. 1994) ("*Paoli II*"); *see also In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444, 463 (3d Cir. 1997) ("*Paoli III*") ("*Paoli II* specifically requires proof of some real physical damage to plaintiffs' land, some damage that 'exists in fact.'").  In *Paoli II*, plaintiffs sought recovery for allegedly diminished property value on the grounds that negligent operation of a railyard caused exposure to dangerous chemicals.  *Id*. at 732-34.  Applying Pennsylvania law, the Third Circuit, held that such a claim requires both that defendant caused "physical damage to plaintiffs' property" and that "repair of this damage will not restore the value of the property to its prior level."  *Id*. at 798.  This requirement was important to preventing "thousands of

insubstantial and peripheral claims…. The rule we have articulated only allows recovery when there has been some initial physical damage to plaintiffs' land." *Id*. at 798 n. 64.

Following this decision, the Third Circuit opined in *Baptiste v. Bethlehem Landfill Co.* that when a negligence claim relies on a nuisance claim as its fundation it must include allegations of physical property damage to survive. *See* 965 F.3d 214, 228 n.10 (3d Cir. 2020). In *Baptiste*, the Appeals Court took particular effort to emphasize the importance of the physical damage requirement for this type of negligence claim stating that "it is not difficult to conceive how the presence of hazardous particulates in the air could constitute physical property damage *if these pollutants infiltrate physical structures*." *Id*. (emphasis added). Further analysis by the Appeals Court included particularized references to examples of contaminant infiltration that could cause the physical damage necessary to sustain a negligence claim including seepage into groundwater and particulates in the air infiltrating the interior of physical structures. *See id*. In the *Baptiste* decision, the Third Circuit enumerated these two examples to show that an allegation of physical infiltration could serve as a vehicle to allege the physical property damage required to sustain a negligence claim based on diminution of value. *See id*.

This rule has barred negligence claims in cases virtually identical to this one. *See Lloyd v. Covanta Plymouth Renewable Energy, LLC*, 2021 U.S. Dist. LEXIS 20353 (E.D. Pa. Feb. 3, 2021). Like Plaintiffs here, the plaintiff in *Lloyd*—represented by the same counsel—alleged negligence on the grounds that "defendant's operation of a waste-to-energy processing facility … emits noxious odors that invade her and other nearby

residents' properties," *id*. at *1, and that these emissions caused "the loss of the use and
enjoyment of her property as well as the diminution in its value," *id*. at *3.  The court
dismissed the negligence claim.  *Paoli II* and the Third Circuit's subsequent decision in
*Baptiste* require "that the damage to plaintiff's property must in some way be physical for
it to constitute property damage when pleading a claim for negligence."  *Lloyd*, 2021 U.S.
Dist. LEXIS 20353, at *7.  Without that allegation, plaintiff could not state a negligence
claim for either diminution of property value or loss of enjoyment.  *Id*. at *7-9; *see also*
*Menkes v. 3M Co.*, 2018 U.S. Dist. LEXIS 84574, at *23 (E.D. Pa. May 21, 2018)
(dismissing claims for diminished value and "annoyance" because "property damages
require physical damage to property" and plaintiffs "have not alleged physical damage to
their real property").

Here, Plaintiffs have made no allegation of physical damage to their homes.
Furthermore, throughout the Complaint, Plaintiffs plead that the allegedly offensive odors
are only detectable outside and do not permeate inside the walls of their home.  *See*
Complaint ¶¶ 23, 24, and 50.  An application of the Third Circuit's *Baptiste* theory of
property infiltration serving as a vehicle for an allegation of physical property damages
fails in this Complaint because Plaintiffs concede that the alleged offensive odors do not
enter homes and can be avoided by staying inside.  *See id.* ¶50.  Plaintiffs do not allege
even temporary physical or any invasion of alleged noxious odors into their homes.
Necessarily, they also fail to allege that "repair of this damage will not restore the value
of the property to its prior level."  *Paoli II*, 35 F.3d at 798.  That precludes their claims

11

for both diminution of value and lost enjoyment, and the negligence count fails as a matter of law.  *See id.*; *see also Lloyd*, 2021 U.S. Dist. LEXIS 20353, at \*7-9.

It is significant to note that the Plaintiffs do not include damages related to personal injury as the basis for any of their claims.  While Plaintiffs allege that David Childs "experienced nausea from the odor", this allegation is nowhere made a basis for a personal injury claim.  *Complaint* at ¶ 22.  Throughout the Complaint, Plaintiffs narrowly limit their damages to the diminution of property value and/or the loss of enjoyment and use of their property, with no mention of injury to persons of any kind. *Id.* at ¶¶ 20, 23, 24, 28, 29, 31, 42, 53, 55, 65, 75, and 76.  Plaintiffs' decision to exclude personal injury damages from the numerous declarations of damages contained in their Complaint indicates that such damages are not intended to underlie their claims in this matter.

## II.    Plaintiffs Have Failed To Allege Any Outrageous Conduct And Their Request For Punitive Damages Should Be Dismissed

Plaintiffs have failed to plead that WSL was engaged in outrageous conduct, and therefore, Plaintiffs' prayer for punitive damages should be dismissed.  Under Pennsylvania law, punitive damages are available "only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." *Hutchinson v. Luddy*, 870 A.2d 766, 770 (Pa. 2005).  Punitive damages are an "'extreme remedy' available in only the most exceptional matters."  *Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005).  Absent allegations of facts that, if proven, would meet this high standard, a conclusory claim for punitive damages fails as a matter of law.  *Boring v. Google Inc.*, 362 F. App'x 273, 283 (3d Cir. 2010) (affirming dismissal of punitive

12

damages claim where the complaint failed to allege "facts suggesting that [the defendant] acted maliciously or recklessly or … intentionally disregarded the [plaintiffs'] rights").

Courts routinely dismiss requests for punitive damages on this basis. *See, e.g.*, *Andrews v. Fullington Trailways, LLC*, 2016 U.S. Dist. LEXIS 88651, at *31-32 (W.D. Pa. July 8, 2016) (citing cases). A rote recital of intent or knowledge, merely characterized in the pleadings as "reckless" or "wanton" is insufficient to survive a motion to dismiss. *Maroz v. Arcelormittal Monessen LLC*, No. 15-cv-0770, 2015 WL 6070172, at *7 (W.D. Pa. Oct. 15, 2015) (dismissing request for punitive damages); *Russell v. Chesapeake Appalachia, L.L.C.*, No. 14-cv-00148, 2014 WL 6634892, at *2 (M.D. Pa. Nov. 21, 2014) (dismissing punitive damages claim for failure to plead facts that "meet the high standard for 'evil motive' or 'reckless indifference' necessary to impose punitive damages in Pennsylvania") (internal citation omitted).

*Maroz* is on point with this case. There, plaintiffs (represented by the same counsel representing Plaintiffs in this case) allegedly were "injured by 'noxious odors and air particulates[,]' which entered [their] properties due to" the defendant's negligent operation of a coke plant in Monessen, Pennsylvania—a coke plant that is about one mile from Plaintiff Childs' residence and within the area at issue in this case. *Id.* ¶ 5. The facts alleged in *Maroz* included that the defendant "has been cited by [PA DEP] six times since [2014] with Notices of Violation for illegal-air emissions"; that "the PA DEP has received 'numerous complaints' from 'surrounding residents' about 'noxious odors and air particulates [entering] onto their properties'"; that the "noxious odor was described by one complainant as 'bad … like rotten eggs'"; and that defendant's "alleged failure to

'install and maintain adequate technology' to properly control the Monessen facility's emissions, have enabled noxious odors and air particulates to invade Plaintiffs' properties, which in turn, has interfered with Plaintiffs' use and enjoyment of their properties."  *Id*.  The court held that the claims of regulatory violations and neighborhood complaints fell "woefully short of alleging" a claim for punitive damages.  *Id*. at *15. Merely alleging that a facility has been the subject of frequent complaints, processes a large volume of material, and its owner is aware of its emissions is not sufficient to support a claim for punitive damages.  *Id*.

Here, Plaintiffs have not alleged sufficient facts to support the premise that WSL's actions were so outrageous as to demonstrate willful, wanton, or reckless conduct. Plaintiffs' allegations of three complaints allegedly made to PA DEP, anecdotal allegations about alleged odors and their impacts, and references to alleged PA DEP investigations are insufficient to meet the high standard necessary for punitive damages. *See* Complaint ¶¶ 24, 25, and 32.  These allegations are identical to those made by the plaintiffs in *Maroz* and are equally deficient as a matter of law.

Outside of the allegations contained in paragraphs 24, 25, and 32 Plaintiffs have alleged no other *factual* basis to support their request.  The remainder of the Complaint contains of nothing more than threadbare recitations of the foundational elements for punitive damages.  *See* Complaint ¶¶ 33, 78, 79.  The mere "formulaic recitation of the elements" is insufficient to overcome the pleading requirements of Rule 8(a).  *Twombly*, 550 U.S. at 555.  Nowhere in the Complaint do Plaintiffs allege any facts that can plausibly suggest that WSL or any of its agents acted with the evil motive or reckless

14

indifference that is required to support a claim for punitive damages.  Absent allegations

of any kind to support these threadbare assertions, Plaintiffs' prayer for punitive damages

should be dismissed.

**III.    Plaintiffs Are Not Entitled To Injunctive Relief Where Such Relief
Contradicts The Primary Jurisdiction Of Agencies With Statutory Authority**

The Court should also dismiss the only request for injunctive relief that Plaintiffs

allege, relief "not inconsistent with the Defendant's state and federal regulatory

obligations."  Complaint, Prayer for Relief ¶ H.  Prospective relief from this Court aimed

at abetting the alleged nuisance would be contrary to the primary jurisdiction that PA

DEP and the Pennsylvania Environmental Hearing Board ("PA EHB") are already

exercising to monitor the Belle Vernon site.  "A motion to dismiss based upon … primary

jurisdiction grounds may be decided under Rule 12(b)(1)" and "the court may consider

materials outside the pleadings in deciding whether to dismiss on these grounds without

converting the motion into one for summary judgment."  *Sierra Club v. Chesapeake

Operating, LLC*, 248 F. Supp. 3d 1194, 1199 (W.D. Okla. 2017).

Primary jurisdiction "comes into play whenever enforcement of the claims

requires the resolution of issues which, under a regulatory scheme, have been placed

within the special competence of an administrative body."  *Baykeeper v. NL Industries,

Inc.*, 660 F. 3d 686, 691 (3rd Cir. 2011); (quoting *United States v. W. Pac. R.R. Co.*, 352

U.S. 59, 64 (1956)).  Courts look to a four factor analysis to determine if primary

jurisdiction is appropriate:

> (1) Whether the question at issue is within the conventional
> experience of judges or whether it involves technical or
> policy considerations within the agency's particular field of

> expertise; (2) Whether the question at issue is particularly
> within the agency's discretion; (3) Whether there exists a
> substantial danger of inconsistent rulings; and (4) Whether
> a prior application to the agency has been made.

*Id.*; (citing *Global Naps, Inc. v. Bell Atl.–N.J.*, 287 F. Supp. 2d 532, 549 (D.N.J. 2003)).

While this Court may be well suited for adjudicating Plaintiffs' claim for damages in this

case, directing the methods by which to comply with the various regulations should be

left to the responsible state and federal agencies. *See, e.g.*, *Sierra Club*, 248 F. Supp. 3d

at 1208 ("The doctrine of primary jurisdiction is more readily applicable if injunctive

relief, requiring scientific or technical expertise, is requested."); *cf.* April 6, 2016 Mem.

Op. and Order, *Ross v. USX Company*, G.D. l7-00-8663 (C.P. Allegheny) (Colville, J.)

(in another case filed by Plaintiffs' counsel, dismissing at the pleading stage the same

generic request for injunctive relief because such relief "would interfere with the Clean

Air Act as implemented by the Allegheny County Health Department through [a]

Consent Judgment" with the defendant); *see also Collins v. Olin Corp.*, 418 F. Supp. 2d

34, 42-47 (D. Conn. 2006) (dismissing claim for injunctive relief in light of the

defendant's agency consent order); *City of Bethany v. Rockwell Automation, Inc.*, 2017

U.S. Dist. LEXIS 139722 (W.D. Okla. Aug. 30, 2017) (same).

The federal EPA and the Pennsylvania General Assembly authorized the PA DEP

and PA EHB to oversee the management of solid wastes, including the authority to abate

nuisances. 71 P.S. § 510-17; *see also* 35 P.S. § 6018, *et seq.*; 59 Fed. Reg. 29804 (federal

approval of Pennsylvania's municipal solid waste program).  This authority includes the

power to investigate, issue enforcement orders, modify or even revoke permits, levy

fines, and/or institute legal action *to enjoin or restrain violations of the Solid Waste*

*Management Act*. *See* 35 P.S. §§ 6018.104, 6018.601-.606, 6018.613. PA DEP also has

the specific authority to "protect the people of the Commonwealth from nuisances." 71

P.S. § 510-17.

The regulatory requirements to which WSL is subject here are wide ranging and

diverse; they include specification of the types and volumes of refuse that can be

accepted and processed, technical operation plans and procedures, and the interplay of

federal EPA requirements as they relate to the capture and processing of landfill gases for

alternative energy usage. *See generally* 25 Pa. Code Chapters 271, 273 *et seq*. These

issues contemplate technical and policy considerations that fall squarely within the

expertise of these agencies, and which these agencies are in the process of overseeing.

The prospective remedies that PA DEP has already approved with respect to the

Belle Vernon site illustrate the point. WSL's Odor Mitigation Plan comprehensively

addresses myriad facets of MSWL operations and regulations. The general purpose of

the Plan is to:

> describe[] management procedures for operating activities,
> cover practices, environmental site control equipment and
> control technologies (i.e. LFG flares, leachate pumps, etc.)
> that may be used to minimize odors; monitoring procedures
> for the timely identification of potential odor-producing
> sources; and corrective actions to be taken in response to
> odors identified both on and off-site.

Ex. C at Attachment 14-4 § 2.0. The Plan then delves into detailed and technical

specifics regarding the timing and nature of site improvements and upgrades to WSL's

gas collection and control system ("GCCS"), *id*. § 3.0; odor/emission assessments and

monitoring, *id*. § 4.0; complaint handling procedures, *id*. § 5.0; corrective action

17

procedures where potential odor emission sources are identified, *id*. § 6.0; surveying and reporting procedures, *id*. § 7.0; best air pollution control practices, *id*. § 8.0; and annual projections of construction requirements related to odor and emission control, *id*. § 9.0. The Plan covers matters like piping networks; the evaluation of leachate management systems; closure construction; the installation of extraction wells; the timing for landfill gas extraction in certain areas based on waste grade; what parameters to measure when operating LFG flares; LFG condensate generation; and landfill cover integrity.  WSL developed this plan with consultation and comments from PA DEP, and that agency approved the plan specifically to address the same alleged violations that Plaintiffs claim in this case.  *Compare* Complaint ¶ 25(b) *with* Ex. A ¶¶ M-AA.  PA DEP also reserved the right to enforce the terms of the Odor Mitigation Plan or to seek additional measures. Ex. A ¶¶ AB.6 – AB.7

Primary jurisdiction respects the expertise and judgment of regulatory agencies by not second-guessing or supplanting their judgment with additional or different court-ordered relief.  That is what Plaintiffs are asking this Court to do in their request for "injunctive relief not inconsistent with the Defendant's state and federal regulatory obligations."  Complaint, Prayer for Relief ¶ H.  WSL has already entered into (and is following) a PA DEP-approved plan that ensures regulatory compliance at the Belle Vernon site.  It would create a substantial risk of conflicting orders were this Court to also assume the duty of overseeing WSL's efforts in the form of a prospective injunctive remedy—and the contempt powers that come along with that.  Determining the most effective method of ensuring compliance with the permits and regulations is an issue that

is obviously and particularly within PA DEP's expertise, and Plaintiffs' prayer for different injunctive relief from this Court should be dismissed.  *See Collins*, 418 F. Supp. 2d at 42-47; *City of Bethany*, 2017 U.S. Dist. LEXIS 139722, at *10-15.

## CONCLUSION

For all the reasons noted above, WSL respectfully requests that this Honorable Court issue an order dismissing with prejudice Plaintiffs' claim for negligence (Count III), Plaintiffs' demand for punitive damages, and Plaintiffs' request for injunctive relief.

Dated:  September 21, 2021                    Respectfully submitted,

                                               /s/ Stanley Yorsz
                                              Stanley Yorsz
                                              PA ID #28979
                                              stanley.yorsz@bipc.com
                                              William J. Moorhead
                                              PA ID #52761
                                              william.moorhead@bipc.com
                                              BUCHANAN INGERSOLL & ROONEY, P.C.
                                              Union Trust Building
                                              501 Grant Street, Suite 200
                                              Pittsburgh, PA 15219
                                              Phone 412-562-8800
                                              Fax 412-562-1040

                                              *Attorneys for Defendant, Westmoreland Sanitary Landfill LLC*

## CERTIFICATE OF SERVICE

19

I hereby certify that on September 21, 2021, I electronically filed a true and complete copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to the counsel of record.

BUCHANAN INGERSOLL & ROONEY PC

By: */s/ Stanley Yorsz*
      Stanley Yorsz